# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AYMAN AISHAT,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 17-2097 (JEB)** |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiff Ayman Aishat has been a legal permanent resident of the United States since 1989 and applied for citizenship in 2000.  He has spent the two decades since waiting for a resolution.  Tired of living in limbo, Aishat recently filed this suit, asking the Court to compel Defendant U.S. Citizenship and Immigration Services (USCIS) to resolve his naturalization application in a timely fashion.  The agency counters by moving to dismiss one count of his Complaint for failure to state a claim and then seeking to transfer the remainder to the Eastern District of Texas.  Persuaded on both grounds, the Court will grant Defendants' Motion and send this case to the Lone Star State.

## I.    Background

According to the Complaint, which the Court must presume true at this stage, Aishat is a citizen of Jordan and first entered this country on a student visa in 1989.  See Compl., ¶¶ 3, 18.  He later received a green card through his employer and currently works as a wireless-network engineer.  Id., ¶ 18.  Plaintiff has also married a U.S. citizen with whom he has three U.S.-citizen children.  Id., ¶ 19.  On June 6, 2000, he too sought citizenship, filing his N-400 naturalization

application with USCIS.  Id., ¶ 20.  Over the ensuing 18 years, his application has encountered several snares.  After interviewing Aishat at the USCIS Dallas Field Office on January 23, 2001, the agency took no action on his application for the next seven years.  Id., ¶¶ 20, 21.  On March 6, 2008, the Dallas Office scheduled another interview with Plaintiff.  Id., ¶ 21.  Three more years passed before USCIS denied his naturalization application, id., ¶ 22, claiming he had failed to disclose his past affiliation with an organization known as the Holy Land Foundation (which the Treasury Department lists as a fundraising arm for "a terrorist organization," Harakat al-Muqawama al-Islamiya).  See MTD, Exh. A (N-400 Denial) at 2-4.

On May 31, 2011, Aishat filed an N-336 naturalization appeal and has since repeatedly requested that the agency provide any adverse evidence used to deny his original application.  See Compl., ¶ 23.  USCIS ignored those requests.  Id.  Instead, it scheduled another interview at the Dallas Office in November of that year and then issued a request for more information related to his application.  Id., ¶¶ 24, 25.  Specifically, it sought "a list of organizations of which Plaintiff had ever been a member of or affiliated with."  Id., ¶ 25.  Aishat timely complied with all requests by February 2012.  Id.

USCIS stayed silent for the next five years, id., ¶ 26, and Plaintiff, understandably fed up with the delay, filed suit in this Court, naming as Defendants: the U.S. Department of Homeland Security; USCIS; Kirstjen Nielsen, the Secretary of Homeland Security; L. Francis Cissna, the Director of USCIS; William Bierman, the Director of the Dallas Field Office; and Tracy Tarango, Acting Director of USCIS District 33.  His Complaint includes four counts: (1) a mandamus claim under 28 U.S.C. § 1361, asking the Court to compel Defendants to promptly adjudicate his N-336 naturalization appeal; (2) allegations that USCIS's "unreasonably delayed" action violated the Administrative Procedure Act; (3) allegations that the delay violated the

Immigration and Nationality Act (INA); and (4) a request for a declaratory judgment under 28 U.S.C. § 2201.

Seemingly spurred by the lawsuit, USCIS issued a notice asking Aishat to provide his "biometrics" (including fingerprinting) at the Dallas Field Office on December 28, 2017, before scheduling yet another interview at the same location on January 25, 2018.  See MTD, Exhs. B, C.  At the same time, it also moved to dismiss Count III of the Complaint and then transfer the remaining counts to the Eastern District of Texas.  After setting out the applicable legal standards, the Court addresses each of Defendants' contentions.

## II.    Legal Standard

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant [P]laintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005).  The pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and she must thus be given every favorable inference that may be drawn from the allegations of fact. Sparrow, 216 F.3d at 1113.

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(citation omitted).  The Court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  For a plaintiff to survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

       B.        § 1404 Transfer of Venue

       Under 28 U.S.C. § 1391(b), venue will lie in any district where (1) the defendant resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or (3) if there is no other district where suit may be brought, where the defendant is subject to personal jurisdiction.  Even if a case is properly venued, however, it need not necessarily remain there.   A district court may, "for the convenience of parties and witnesses, in the interests of justice . . .[,] transfer [it] . . . to any other district . . . where it might have been brought."  28 U.S.C. § 1404(a). District courts have "discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

**III.    Analysis**

       Plaintiff's suit revolves around the USCIS Dallas Field Office's delay in processing his naturalization application.  Defendants, contending that this Dallas-centric action belongs in the Eastern District of Texas, ask this Court to transfer it there.  Before it does so, however, they also seek dismissal of Count III, which alleges that the agency's delay violated the INA.  While the D.C. Circuit has counseled that "normally," a court should "be inclined to transfer the entire

case," it need not "follow that path when briefing and argument in [the] court have convinced [it] that [a plaintiff] has stated no claim" against the defendant.  See Cameron v. Thornburgh, 983 F.2d 253, 258 n.5 (D.C. Cir. 1993).  Such is the case here, as the Government presents a straightforward case for dismissal of one count.  The Court thus begins its analysis there before addressing Defendants' Motion to Transfer.

> A.   Dismissal Under Rule 12(b)(6)

Under Count III, Plaintiff alleges that "[b]y refusing to adjudicate [his] N-336 naturalization appeal, Defendants are depriving [him] of his statutory right under the INA to seek judicial review of the denial of his N-400 naturalization application."  Compl., ¶ 40.  By way of background, an applicant for naturalization initiates the process by submitting USCIS's Form N-400.  See 8 U.S.C. § 1446.  When, as here, the agency issues an adverse decision, the applicant can appeal it by requesting a hearing before an immigration officer within 30 days of denial.  See 8 U.S.C. § 1447(a).  Upon receipt of the administrative appeal (also known as the N-336 Form), the agency must schedule a review hearing within "180 days from the date upon which the appeal is filed" before a different and higher ranking immigration officer than the one who denied the original naturalization application.  See 8 C.F.R. § 336.2(b).

Despite scheduling several interviews, the Dallas Field Office has yet to issue a decision on his appeal, and Aishat claims that this delay has violated the INA.  See Compl., ¶¶ 38-40.  On its face, though, that statute provides no basis for this Court's review until Plaintiff has exhausted his administrative remedies.  See 8 U.S.C. § 1421(c); 8 C.F.R. § 336.9(d).  Aishat, notably, does not argue otherwise.  He concedes that section 1421(c), by its plain text, "permits a denied naturalization applicant to seek judicial review of his naturalization review only after the administrative appeals process has been completed."  Opp. at 14 (emphasis added); Compl., ¶ 17.

He nevertheless maintains that this Court should find an <u>implied</u> right of action within the INA statutory scheme, as the agency's delay has otherwise "made it impossible for Plaintiff . . . to seek judicial review of his application." Opp. at 13. The Supreme Court has specified four factors when evaluating such an argument:

> (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether some indication exists of legislative intent, explicit or implicit, to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purpose of the legislative scheme; and (4) whether the cause of action is one traditionally related to state law, such that it would be inappropriate for the court to infer a cause of action based solely on federal law.

<u>El Paso Nat. Gas Go. v. United States</u>, 750 F.3d 863, 889 (D.C. Cir. 2014). The Court need not sequentially address each factor, as "[s]tatutory intent . . . is determinative" when applying this test. <u>See</u> <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286 (2001). "Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." <u>Id.</u> at 286-87.

"A plaintiff bears a relatively heavy burden" to show congressional intent, as he must "demonstrat[e] that Congress affirmatively or specifically contemplated private enforcement when it passed the relevant statute." <u>Samuels v. Dist. of Columbia</u>, 770 F.2d 184, 193 (D.C. Cir. 1985). Aishat offers no concrete evidence to that end, contending only that the structure of the INA, taken as whole, suggests a congressional interest in the "prompt adjudication of naturalization applications, as well as mechanisms for judicial intervention if timely adjudication is not forthcoming." Opp. at 13.

On this point, Plaintiff cites section 1447(b) of the INA, under which a district court can assume jurisdiction if the agency fails to adjudicate an <u>original</u> naturalization application within 120 days after an examination. As he acknowledges, that provision applies only to USCIS's

"failure to make a determination under section 1446." 8 U.S.C. § 1447(b). Section 1446, in turn, deals exclusively with USCIS's resolution of N-400 forms (*i.e.*, original naturalization applications). Here, USCIS denied Plaintiff's Form N-400 on May 6, 2011, see Compl., ¶ 22; MTD, Exh. A, so the Court cannot act on that ground. The right to request appellate review through Form N-336, meanwhile, "is set forth not in § 1446, but in § 1447(a)," such that 1447(b) is inapplicable to it. Al Hamati v. Gonzalez, 2010 WL 623716, at *3 (E.D. Mo. Feb. 18, 2010) (emphasis added).

Plaintiff questions why Congress would "specifically provide for judicial intervention in the adjudication of an N-400 naturalization application after a mere 120 days under § 1447(b), only to permit an N-336 appeal to languish before the agency indefinitely." Opp. at 14. But it is not this Court's place to resolve any such incongruity. Rather, "[where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983); see also Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."). If anything then, section 1447(b) indicates that Congress purposely omitted a cause of action for an agency's inaction on N-336 appeals; in such a case, this Court sees no basis to imply a right of action into the INA. It therefore dismisses Count III for failure to state a claim. This, of course, does not deprive Plaintiff of his right to challenge the delay under the APA or through a mandamus action, as those counts remain fully intact.

B.    Transfer Under § 1404

Turning to its Motion to Transfer, the Government concedes, "[f]or the purposes of this case only," that venue is proper in this District under § 1391(e)(1)(A), as four Defendants reside in this city.  See MTD at 8 n.4.  It nevertheless contends that the Court should exercise its discretion to transfer this case under 28 U.S.C. § 1404(a) to the Eastern District of Texas.  This Court has previously explained the standard governing such a request:

> To warrant transfer under § 1404(a), a movant must first show that the plaintiff could originally have brought the case in the transferee district.  Treppel v. Reason, 793 F. Supp. 2d 429, 435 (D.D.C. 2011).  The movant must also show that "considerations of convenience and the interest of justice weigh in favor of transfer . . . ."  Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003).  This second inquiry "calls on the district court to weigh in the balance a number of case-specific factors," related to both the public and private interests at stake.  [Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).]  The burden is on the moving party to establish that transfer is proper.  Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996).

Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 31 (D.D.C. 2013).

The parties here agree that the threshold requirement of § 1404(a) is met, as the case could have originally been brought in Texas.  More specifically, where a defendant "is an officer or employee of the United States," venue is proper in any district in which: "A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . , or (C) the plaintiff resides if no real property is involved in the action."  The Eastern District of Texas checks all three boxes.

Having cleared this preliminary hurdle, the Court next moves to the private- and public-interest factors that underlie the case-specific, discretionary transfer inquiry under § 1404(a).  "Those private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5)

the convenience of the witnesses; and (6) the ease of access to sources of proof." Douglas, 918 F. Supp. 2d at 31 (citation omitted). "The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home." Id. (citation omitted).

       *1. Private-Interest Factors*

        a. Plaintiff's Choice of Forum

While courts generally defer to a plaintiff's choice of forum, deference is not always warranted "where the plaintiff's choice of forum has no meaningful ties to the controversy," and where transfer is sought "to [a] forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected." Trout Unlimited, 944 F. Supp. at 17. Indeed, when "the forum preferred by the plaintiff is not his home forum," and the defendant prefers the plaintiff's home forum, then there is little reason to defer to the plaintiff's preference. See Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 52 (D.D.C. 2000); accord Oudes v. Block, 516 F. Supp. 13, 14 (D.D.C. 1981) (finding "negligible or non-existent" inconvenience for plaintiff in transferring case to plaintiff's home forum).

Such is the case here. Aishat resides in the Eastern District of Texas (Allen, Texas, to be exact). See Opp. at 8. Defendants' preferred forum is thus also Plaintiff's home forum, which typically cuts in favor of transfer. See 15 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 3848 (4th ed. 2017) ("If the plaintiff is not a resident of the forum, the plaintiff's forum choice may be entitled to relatively little deference."). In such a scenario, Plaintiff's choice of forum receives little weight in the Court's analysis.

b.   Defendants' Choice of Forum

While a defendant's choice of forum is a consideration when deciding a § 1404(a) motion, it is not ordinarily entitled to deference.  See Mahoney v. Eli Lilly & Co., 545 F. Supp. 2d 123, 127 (D.D.C. 2008).  And here, where Defendants move to transfer over Plaintiff's opposition, they must establish the added convenience and justice of litigating in their chosen forum.  See In re Vitamins Antitrust Litig., 263 F. Supp. 2d 67, 69 (D.D.C. 2003).  To the extent this factor carries any heft, though, it weighs in favor of transfer.

c.   Whether Claim Arose Elsewhere

That brings the Court to the crux of the parties' dispute: whether there is a nexus between the underlying transactions giving rise to the claim and the forum selected.  See, e.g., Gipson v. Wells Fargo & Co., 563 F. Supp. 2d 149, 158 (D.D.C. 2008).  Transfer is favored when "the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum."  Douglas, 918 F. Supp. 2d at 32 (citation omitted).

Here, all relevant contacts between Defendants and Plaintiff unfolded at the Dallas Field Office. These interactions include: an interview on January 23, 2001, see Compl., ¶ 20; an interview on March 6, 2008, id., ¶ 21; the Office's written denial of the naturalization application on May 6, 2011, id., ¶ 22; an interview on November 29, 2011, id., ¶ 24; and the most recent interview on January 25, 2018.  See MTD, Exh. B (Call-In Letter).  Beyond the fact that Plaintiff resides in the Eastern District of Texas, all the decisions on his application will issue from there, too.

True, Plaintiff names as Defendants certain federal agencies and high-level government officials who reside in the District.  The D.C. Circuit has cautioned, however, that "[c]ourts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a

plaintiff might manufacture venue in the District of Columbia." Cameron, 983 F.2d at 256. "By naming high government officials as defendants," it warned, "a plaintiff could bring a suit here that properly should be pursued elsewhere." Id.; see also Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003). In this case, as in Cameron, the Complaint offered no "acts or omissions" occurring in the District, nor any allegations that the named officials (the Acting Secretary of DHS and the Acting Director of USCIS) had adjudicated his application. See Cameron, 983 F.2d at 256.

In his briefing, Plaintiff comes closer to establishing a nexus to the District. He argues, for the first time, that "many policy decisions that have almost certainly directly affected Plaintiff's naturalization application did occur at Defendants' agency headquarters in Washington, D.C." Opp. at 8. To wit, Aishat maintains that as of April 2008, USCIS implemented an agency-wide policy known as the "Controlled Application Review and Resolution Program" (CARRP). Id. Under CARRP, Plaintiff alleges that USCIS officers must screen applications for "national security concerns." Id. If an applicant raises red flags (particularly if they are of Middle Eastern or South Asian descent), he contends, the agency places it on a special adjudication track, which mandates that officers either deny the application or, as relevant here, "perpetual[ly] delay" it. Id. at 8, 11.

Were Aishat directly challenging CARRP, the Court agrees that the interests of justice could well favor venue here. Perhaps even challenging the Dallas Field Office's application of CARRP to him would suffice. See Ravulapalli v. Napolitano, 773 F. Supp. 2d 41, 56 (D.D.C. 2011) ("Because Plaintiffs are challenging the application of those policies [issued from USCIS headquarters], this factor weighs against transfer."). Such a challenge, however, is nowhere to be found in Plaintiff's Complaint, which never once attributes USCIS's delay to that policy.

11

Indeed, the Complaint makes no mention of CARRP at all.  While the Court must accept Aishat's well-pled factual allegations as true, it can only treat allusions to CARRP in his briefing as "speculative."  Saudi v. Northrop Grumman Corp., 273 F. Supp. 2d 101, 104 (D.D.C. 2003) ("[t]aking into consideration [plaintiff's] causes of action, which do not mention or even allude to any conduct by the federal government, . . . (speculative) facts are too far removed to" sustain venue in the District); see also Kuklinski v. U.S. Dep't of Treasury, 2014 WL 643148, at *7 (D.D.C. Nov. 18, 2014) (declining to find venue proper when plaintiff — despite allegations in briefing — had "not pled facts to suggest that [] decisions [regarding his application] were made in Washington, D.C. and any inferences drawn would be mere speculation").

As Plaintiff's "causes of action" lack any nexus with the forum selected, this factor cuts in favor of transfer.  Saudi, 273 F. Supp. 2d at 104; cf. 15 Wright & Miller, Fed. Prac. & Proc. § 3851 (noting that while the district court "is not limited to . . . the original complaint" when considering a §1404(a) transfer motion, it should evaluate "claims and controversies properly joined in the proceeding") (emphasis added).

> d.  Convenience of Parties, Convenience of Witnesses & Ease of Access to Sources of Proof

The three final factors all relate to convenience, and they too favor transfer.  Plaintiff resides in Allen, Texas, so he "cannot reasonably claim to be inconvenienced by litigating in [his] home forum."  Tower Labs., Ltd. v. Lush Cosmetics Ltd., 2018 WL 534323, at *4 (D.D.C. 2018) (citation omitted).   The same is true for the Defendants with the most proximate ties to this case: William Bierman, the Director of the Dallas Field Office, and Tracy Taranga, the Acting Director of the Dallas District Office.  At this stage, neither side has outlined much in the way of planned witnesses or sources of proof, but it stands to reason that most such persons or

records will be found in Dallas, as Plaintiff's interviews (as well as the adjudication on his N-400 application) all occurred there.

To the extent Aishat does decide to pursue a claim related to CARRP, those Dallas-based officials are still likely the most relevant sources to tap.  In a supplemental declaration, for example, Aishat reports appearing for an interview in Dallas with Officer Afrodis Urena.  See ECF No. 11-1 (Declaration of Ayman M. Aishat), ¶ 2.  He takes issue with Urena's line of questioning, as well as the officer's refusal to provide certain documents related to his application, allegedly after "higher ranking USCIS officials in Washington, D.C.," intervened. Id., ¶¶ 6-8.  To flesh out Urena's motivations, Plaintiff would necessarily call this field officer (and likely others in his office) as a witness.  As the only apparent witnesses at this point all reside in Texas, this factor also tilts toward transfer.

    2. *Public-Interest Factors*

The public-interest factors, on the whole, lean the same way.

    a. Transferee's Familiarity with the Governing Laws

Neither party contests that the legal issues presented here — which involve claims of federal law only — could be handled competently by a court in either district.  See Opp. at 11; Reply at 5.  This factor is therefore neutral.  See, e.g., Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (where "both courts are competent to interpret the federal statutes involved[,] . . . there is no reason to transfer or not transfer based on this factor").

    b. Relative Congestion of the Courts

Plaintiff maintains that "[t]he relative docket congestion between the District and the Eastern District of Texas strongly weighs against transfer of this case."  Opp. at 2.  He highlights that as of September 2017, there were 615 cases per judge pending in the latter district, compared

to 263 per judge here.  Id. at 12 & Exh. A.  Those raw statistics, however, may overstate the difference, as they "provide, at best, only a rough measure of the relative congestion of the dockets in the two districts."  United States v. H & R Block, Inc., 789 F. Supp. 2d 74, 84-85 (D.D.C. 2011) (treating relative congestion of dockets as neutral factor in transfer analysis). "They do not, for example, reflect the differences in the caseloads carried by different individual judges in each district.  Any disparities between the lengths of time from filing to trial may also reflect differences other than congestion, such as differences in the types of cases that are likely to be tried in each district and the level of discovery and pre-trial motion practice required in those cases."  Id.  This factor, then, weighs only slightly against transfer.

c.  Local Interest in Controversies

On the other side of the ledger, Defendants argue that the Eastern District's interest in "resolving local disputes at home" strongly favors transfer.  See Reply at 5.  The Court agrees. This case turns on whether it should compel the Dallas Field Office to expedite its adjudication of Plaintiff's naturalization appeal.  As several courts in this Circuit have concluded, "[T]he district in which the relevant USCIS Field Office is located is 'better positioned' to be involved in 'dictating the priorities of a local USCIS office' and 'may have a superior interest in doing so.'"  Chauhan v. Napolitano, 746 F. Supp. 2d 99, 105 (D.D.C. 2010) (quoting Aftab v. Gonzalez, 597 F. Supp. 2d 76, 84 (D.D.C. 2009)); see also Abusadeh v. Chertoff, 2007 WL 2111036, at *8 (D.D.C. July 23, 2007) (same); Mohammadi v. Scharfen, 609 F. Supp. 2d 14, 19 (D.D.C. 2009) (holding transferee court "had a substantial interest in the resolution of claims" where plaintiff resided in that district, had been fingerprinted and interviewed there, and his application for naturalization would be adjudicated there).

That is especially so because should the Dallas Office deny Plaintiff's appeal, he can seek judicial review of that decision only "before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c). The Eastern District of Texas would thus be the sole proper venue for further review of any denial — a decision that might well be bound up in the agency's reason for delaying now. See Opp. at 8 (attributing Defendants' initial denial of his application and its subsequent delay to CARRP). That district court, then, has an interest in determining in the first instance whether USCIS has unreasonably delayed the adjudication of Plaintiff's Form N-336 or whether a writ of mandamus should issue directing USCIS to act upon it.

\* \* \*

All told, this case involves a Texas-based Plaintiff seeking to compel the USCIS's Texas-based field officers to adjudicate his application. The private factors thus counsel strongly in favor of sending the suit there. While the Court is sympathetic to Aishat's argument about docket congestion (especially given the delay already endured), the public-interest factors ultimately tilt the same way.

## IV.  Conclusion

For the foregoing reasons, the Court will dismiss Count III of Plaintiff's Complaint and transfer the remaining counts to the Eastern District of Texas. It will issue a contemporaneous Order so stating.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 12, 2018